PEOPLE *v.* EDELSOHN.

1. CRIMINAL LAW—UNLAWFUL PRACTICE OF DENTISTRY—EVIDENCE.
   Under an information charging defendant generally with prac-
   ticing dentistry unlawfully in that he had no license to do so,
   as well as taking impressions of tooth of a particular person,
   it was not error to receive testimony as to other acts than the
   specific one charged tending to show the unlawful practice of
   dentistry, where no motion to quash or to file a bill of par-
   ticulars had been made (Act No. 122, § 4, Pub. Acts 1939).

2. SAME—UNLAWFUL PRACTICE OF DENTISTRY—CONTINUING OFFENSE
   —EVIDENCE.
   The unlawful practice of dentistry over a period of time is a
   continuing offense and testimony of separate acts, although
   each in itself might constitute a separate offense, was admissible
   as tending to show the continuing offense as defined in the
   statute regulating dentistry (Act No. 122, §§ 4, 12, 20, Pub.
   Acts 1939).

3. SAME—UNLAWFUL PRACTICE OF DENTISTRY—EVIDENCE.
   In prosecution for the unlawful practice of dentistry, evidence,
   consisting of the testimony of three different persons as to
   examination of their mouths after extraction of teeth, the
   application of medicants to the tissues and taking of impres-
   sions, and that such operations were included in the curricula
   of the University of Michigan dental school, presented for con-
   sideration of jury sufficient evidence from which they might
   find, beyond a reasonable doubt, that defendant was guilty
   as charged (Act No. 122, §§ 4, 12, 20, Pub. Acts 1939).

Appeal from Recorders Court for the City of De-
troit; Ide (O. Z.), J.   Submitted November 8, 1948.
(Docket No. 93, Calendar No. 44,032.) Decided
January 3, 1949.   Rehearing denied February 28,
1949.

REFERENCES FOR POINTS IN HEADNOTES

[1] 20 Am. Jur., Evidence, §§ 302, 303, 309, 310; 41 Am. Jur.,
    Physicians and Surgeons, § 69.
[2] 41 Am. Jur., Physicians and Surgeons, § 68.

Dave Edelsohn was convicted of practicing dentistry without a license. Affirmed.

*Edward N. Barnard,* for appellant.

*Eugene F. Black,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *James N. McNally,* Prosecuting Attorney, and *Robert N. Smiley* and *Mark Friedman,* Assistants Prosecuting Attorney, for the people.

BOYLES, J. Defendant appeals from a jury verdict of guilty and a sentence imposed in the recorder's court for the city of Detroit on an information charging that said defendant "heretofore, to-wit on about the 27th day of October, A. D. 1945 and on divers other days and dates up to and including the 3d day of April, A.D. 1946 at the said city of Detroit, in the county aforesaid did then and there unlawfully practice dentistry in the city of Detroit, in the county and State aforesaid, not being at the time a dentist licensed to practice as such in this State, and not being registered in the office of the county clerk of Wayne county as provided by law, and he, the said Dave Edelsohn, did then and there take impressions of the human tooth, teeth, jaws and did perform any phase of any operation incident to the fitting of a denture to one Francis Michellod; contrary to the form of the statute," et cetera.

The statute (Act No. 122, § 4, Pub. Acts 1939*[Comp. Laws Supp. 1940, § 6780–24, Stat. Ann. 1947 Cum. Supp. § 14.629(4)]), on which said charge was based provides, "it shall be unlawful for any person to practice or engage in the practice of dentistry" unless duly licensed and registered in this State as a dentist.

---

* 2 Comp. Laws 1948, § 338.204.—REPORTER.

Section 20 of the act* (Comp. Laws Supp. 1940, § 6780–40, Stat. Ann. 1947 Cum. Supp. § 14.629 [20]) provides:

"Any person who shall violate any provision of this act shall be deemed guilty of a misdemeanor."

On this appeal the defendant seeks reversal on the ground that it was error for the trial judge "to admit proofs of offenses other than that charged in the information," and that it was error "to instruct the jury that proof of offenses other than that charged in the information is proof of guilt."

That claim of error obviously is based on the theory that the only charge in the information of any violation of the act refers to the fitting of a denture to one Francis Michellod, whereas the information also charges the defendant generally with the unlawful practice of dentistry over a period of time. No motion was made to quash the information, or to require the prosecution to file a bill of particulars as to other specific acts claimed to constitute the practice of dentistry. It was not error to receive testimony as to other acts tending to show the unlawful practice of dentistry. Appellant relies on *People* v. *Watson,* 196 Mich. 36. The case is readily distinguishable. In that case the defendant was charged generally with practicing medicine without a license. The information did not allege any specific act, and the Court held that the motion which was made to quash the information should have been granted for that reason. In the case at bar no motion to quash the information was made; and, furthermore, the information also charges two specific acts which are declared by section 12 of the act† (Comp. Laws Supp. 1940, § 6780–32, Stat. Ann.

---

* 2 Comp. Laws 1948, § 338.220.—REPORTER.
† 2 Comp. Laws 1948, § 338.212.—REPORTER.

1947 Cum. Supp. § 14.629[12]) to be the practice of dentistry within the meaning of the act. The information charges that the defendant "did then and there take impressions of the human tooth, teeth, jaws and did perform any phase of any operation incident to the fitting of a denture to one Francis Michellod." Subdivisions (8) and (10) of section 12 of the act specifically declare these acts to be the practice of dentistry within the meaning of the act. It was not error to receive testimony of acts tending to show the practice of dentistry.

The information charged the defendant with a continuing offense—the unlawful practice of dentistry over a period of time. Testimony of separate acts, although each in itself might constitute a separate offense, was admissible as tending to show the continuing offense of the unlawful practice of dentistry as defined in the act. *Anderson* v. *Van Buren Circuit Judge,* 130 Mich. 697; *People* v. *Jackson,* 280 Mich. 6.

Appellant claims that the court should have directed a verdict of not guilty, and that the verdict is "contrary to the great weight of the evidence." Four witnesses were called and testified for the people. Evidence was adduced before the jury as follows:

The defendant is not a licensed or registered dentist. At the time of the trial he had been an employee in one Dr. Applegate's dental offices for five years. One Rose Michellod testified she went to Dr. Applegate's office with her husband in October, 1945, was given a book or card, went into a little room where she was seated in a dental chair and where the defendant checked over her teeth after putting a stick into her mouth, and gave her a price. She was sent "to another little place, in a booth," where two teeth were removed by some other man. She further testified:

"I went (again) the following Monday. I don't know the date, but it was the following Monday from the Saturday I had my teeth out. I had a real sore jaw. On that day I saw Dr. Applegate. By Dr. Applegate, I mean that man, the second one (indicating defendant). That is the man, yes, sir. I asked him if he was Dr. Applegate, to make sure, and he told me 'Yes.' He then took me in the same room he did on the previous Saturday and he treated my mouth. He swabbed my whole mouth on this side (indicating). I noticed he had in his hand a little tiny mirror and a swab. It was medicated because you could feel it on your jaw and taste it. I am sure he is the person that did that work. I am certain that it is the defendant who is here in the courtroom."

Francis Michellod, husband of the above witness, testified that he went to Dr. Applegate's office with his wife; that he wanted six teeth pulled and an upper and lower plate; that the defendant

"gave me the price of $100, looked in my mouth and seen these teeth at the bottom, and that is all there was to that. He turned around and had the dentist pull them out. That was on my lower jaw.    *    *    *

"I later went back to Dr. Applegate's office for treatment in 1946.

"*Q.* Did you pay any money to this defendant while you were receiving treatment there?

"*A.* Well, I laid $40 on the counter, it was one Saturday. They were always sending me bills. Due to my health, I thought I would come in when I figured the five or six months was up and I paid $40, and that man (indicating defendant) was the only man in there, and he said, 'I will take care of you.' I stood there three or four minutes and he said, 'I will take care of you,' and he took my top and lower impressions.

"*Q.* Do you recall when that was?

"*A.* It is right on there, the date I paid the $40.

"*Q.* You said that you paid him the $40.

"*A*. I did not pay him the $40. I laid the $40 down and the young lady picked it up and rang it up. I sat down. He was sitting in front and he said, 'I will take care of you. Come in and I will take care of you.' That was in March.  *  *  *

"*Q*. Had your gums healed up by then?

"*A*. They were healed about as good as they could be—the same as they are right to day. This defendant then did some work on my mouth. He took the lower and upper impressions.

"*Q*. Did you see what he did before he took the impressions?

"*A*. No, that is all he could have done. He put the stuff and a clamp in my mouth and took the lower and upper impressions. First he took one, then the other one. He held it in there tight, like when you take the upper, and he pressed it right up there good and tight (indicating).

"*Q*. You are sure that was done by this defendant?

"*A*. That is right, I am positive. This defendant did not remove the teeth from my jaw.  *  *  *

"*The Court:*  Then you stated he took some impressions. You mean in this case?

"*A*. Yes, in 1946. First I had my teeth pulled out. They wanted to put them in right away. I wanted the gums to heal. I did not have the money then. When I went back, he took it then.

"*The Court:*  He took the impression then?

"*A*. Yes.

"*The Court:*  What actually did he do?

"*A*. He put his fingers in my mouth, put the cement up into my mouth over here (indicating), pressed it up in there and took it out.

"*The Court:*  And took the cement out?

"*A*. Yes. That was on a Saturday. When he got through with them teeth, that plate, he ground the last three teeth down after the plate was made, and told me to wear them, I told him I would not wear them. I don't know if he ground them or not, but

he took them out of my mouth and went to the back room.  I cannot see behind walls.

"Who the dentist was that pulled the 6 teeth, I could not say.  He was not the defendant.

"*Q*. You came back and this same dentist also fitted your teeth, did he not?

"*A*. Fitted my teeth?

"*Q*. Yes.

"*A*. That man tried to fit them, the man that is sitting right in back of you (indicating defendant), with the other dentist.

"*Q*. The other dentist fitted the teeth?

"*A*. Yes; in other words, he got the bite.  After the bite was made that man sitting back of you tried to straighten them up by grinding them.  I don't know if he ground them in the back or not, but he put them in my mouth and told me to wear them.

\*    \*    \*

"*Q*. And this dentist told the defendant what was the matter with it?

"*A*. No, the defendant told the dentist what was the matter with it, he was taking over."

One Harold Larson testified that he had dental work done at the office of Dr. Applegate, that he knew the defendant; that he talked with the defendant about having some teeth pulled and an impression taken; that he had some teeth pulled, and later returned to Dr. Applegate's office.  He testified:

"I again returned to Dr. Applegate's office in connection with my teeth after my first visit.  About two weeks later, yes.  On that visit, I talked to Dave Edelsohn.  I came in and said 'How do you do.'  He said 'Just step right in this booth,' and I done it.  I did not remain standing in that booth. I sat down.  I sat in the second chair in there.  It was a dental chair.  \*    \*    \*

"After I sat in the chair, he asked me to open up my mouth.  Dave Edelsohn.  I don't know why he asked me to open up my mouth, I don't know why he

looked in, but he felt like this with his fingers, like that (demonstrating), and he said 'all right,' and he takes; I don't know what you call it, but I call it mud, he takes and puts mud in my mouth and started taking my impression. He put the mud right on my gums with his fingers. * * * After he placed the mud in my mouth, then he asked me to bite down, and I done it. Then he asked me to hold it there for, well, maybe for a couple of minutes I would say. Then, after I done that, then he took out the mud, what I call mud, he took it out of my mouth. Then there was right alongside of me, to the left, there was some water there, then he asked me to rinse my mouth out, and I done that. Then he said 'Come back'—now, whether it was in a week or ten days, I don't remember, but, anyway, he told me to come back in approximately, say a week or ten days he asked me to come back. I returned, and upon my return I saw Dave Edelsohn. Then he started to fix up my teeth, you know, just like a dentist. Of course, I don't know much about it. * * *

"*Q.* (Continuing): Did you ever have any teeth fitted in your mouth at the office of Dr. Applegate after that impression had been made?

"*A.* Yes. They were fitted by Dave Edelsohn.

"*Q.* And when were they fitted?

"*A.* Well, I will say about two weeks later. * * *

"*Q.* (By Mr. Bachor, resuming): Now, who fitted the teeth in your mouth?

"*A.* Dave Edelsohn—Dave Edelsohn. * * *

"*Q.* On how many occasions did the defendant in this case fit or attempt to fit your teeth? * * *

"*A.* I will say around 2 or 3 times."

Section 12 of the dentistry act, *supra*, provides in part as follows:

"A person practices dentistry, within the meaning of this act, when it shall be shown: * * *

"8. That he takes impressions of the human tooth, teeth, jaws, or performs any phase of any operation

incident to the replacement of a part of a tooth, teeth or associated tissues; or  *   *   *

"10. That he performs any operation included in the curricula of recognized dental schools or colleges."

There was undisputed testimony that the examination of the human mouth after extractions, the application of medicants to the injured tissues, and the taking of impressions, were operations included in the curricula of the University of Michigan dental school. The only witness sworn on behalf of the defendant was the cashier for Dr. Applegate, whose testimony, with records from the office, tended to refute the testimony of the above witnesses for the people. The controlling issue of fact, whether the defendant did practice dentistry contrary to the provisions of the act, was submitted to the jury under appropriate instructions. There was testimony from which the jury might find, beyond a reasonable doubt, that the defendant was guilty as charged in the information.

Other questions discussed in the briefs, incidental to the above conclusions, are not controlling of the result. Conviction and sentence affirmed.

SHARPE, C. J., and BUSHNELL, REID, NORTH, DETHMERS, BUTZEL, and CARR, JJ., concurred.